MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. ELIJAH SMITH, BY NEXT FRIEND.

Decided January 26, 1907.

1.—Tram Car—Operating Same—Fellow Servants.

A tram car, used and operated by a railway company upon a tram railroad adjacent to and in connection with its main line of road for the purpose of conveying crossties to and from a creosoting plant, is a "car" within the mean-

ing of our fellow servant statutes, and an employe engaged in the operation of such car comes within the protection of said statutes.

**2.—Fellow Servant Statute, not Unconstitutional.**

The Act of the 25th Legislature, approved June 18, 1897, concerning fellow servants, is not in violation of the 14th amendment to the Constitution of the United States. By its terms it applies to "every person, receiver or corporation that owns or operates a railroad," and therefore does not deny to a railroad corporation the equal protection of the laws.

**3.—Negligence—Injury—Sufficiency of Evidence.**

Even though the direct evidence does not point out with exactness the particular act of negligence which caused the accident, still, when from all the evidence the inference is reasonable and could be fairly drawn that the accident and the plaintiff's injuries were caused in one or more of the negligent ways alleged, it is sufficient.

**4.—Assumed Risk—Evidence.**

The fact that plaintiff knew that some of the instruments and appliances sometimes used by him and his fellow servants in the discharge of their duties were defective, did not charge him with the assumption of the risk incident to the undertaking in which he was engaged at the time of the injury when the evidence showed that on this particular occasion he did not know of the defective condition of the instruments and appliances then in use.

**5.—Same—Minority.**

A minor does not assume the risk of the accident causing his injury unless in addition to a knowledge of the defects in the instruments and appliances he knew the nature and extent of the danger and had sufficient discretion to properly weigh it.

Appeal from the District Court of Hunt County. Tried below before Hon. T. D. Montrose.

*T. S. Miller* and *Perkins & Craddock,* for appellant.—The allegations of the petition show that the tram car which the appellee was assisting to replace on the tram railway was not a car within the meaning of the Fellow Servant statute; that he and his colaborers were fellow servants within the meaning of the law, and that the appellee and his fellow servants at the time and place of the accident were not engaged in the work of operating a car. Act 1897 (Spec. Session 25 Leg.), 14; Perez v. San Antonio & A. P. Ry. Co., 67 S. W. Rep., 137; Lakey v. Texas & P. Ry. Co., 75 S. W. Rep., 566; Kansas City, M. & B. Ry. Co. v. Crocker, 11 So. Rep., 262; Benson v. Chicago, St. P. M. & O. Ry. Co., 77 N. W. Rep., 798.

There was error in refusing the special charge instructing the jury peremptorily to return a verdict for appellant, because the evidence failed to show any negligence of the appellant proximately causing the accident; the evidence failed to show what in fact caused the accident, failed to show any defect in the car or tools or any negligence of appellee's coemployes and the accident itself was not of a character from which negligence could be inferred. Perez v. San Antonio & A. P. Ry. Co., 67 S. W. Rep., 137, and the authorities there cited; Funk v. St. Paul City Ry. Co. 29 Law Rep. Ann. 208; Elliott on Railroads, sec. 1354; Texas & N. O. Ry. Co. v. Crowder, 63 Texas, 504; McCray v. Galveston, H. & S. A. Ry. Co., 89 Texas, 168; Broadway v. San

Antonio Gas Co., 60 S. W. Rep., 270; Labatt Master and Servant, secs. 834, 835.

If the tram car which the appellee and his fellow servants were replacing upon the tram track at the time of the accident was a "car" within the meaning of chapter 6, general laws of the First Called Session of the Twenty-fifth Legislature of Texas, approved June 18, 1897, as by the charge of the court and judgment approved by it it is held to be, then said statute is void as being in contravention of and repugnant to the 14th amendment of the Constitution of the United States in that as so construed and applied it denies to railway companies, and denies to the appellant, the equal protection of the laws. Missouri, K. & T. Ry. Co. v. Medaris Kans., 12 A. & E. R. R. Cases (N. S.), 698; Ney v. Dubuque & S. C. Ry. Co., 20 Ia., 347; Deppe v. Chicago, R. I. & P. Ry. Co., 36 Ia., 52; Lavallee v. St. Paul, M. & M. Ry. Co., 40 Minn., 249; Luce v. Chicago, St. P. M. & O. Ry. Co., 24 N. W. Rep., 600; Matson v. Chicago, R. I. & P. Ry. Co., 25 N. W. Rep., 911; Stroble v. Chicago, M. & St. P. Ry. Co., 31 N. W. Rep., —; Smith v. Louisville & N. Ry. Co., 75 Ala., 449; Gulf, C. & S. F. Ry. Co. v. Ellis, 165 U. S., 150; Missouri Pac. Ry. Co. v. Mackey, 127 U. S., 205; Chicago, K. & W. Ry. Co. v. Pontius, 157 U. S., 209.

The uncontradicted evidence having shown that some of the pieces of rail used in replacing tram cars upon the tramway were worn, sleek and battered at the end, and it having further shown that the channel bars of some of the cars were worn, rusty and sleek, and the evidence having further shown without contradiction that the plaintiff knew some of the cars and some of the pieces of rail were in the condition stated the issue of assumed risk was thereby presented and each of the special charges presenting that issue should have been given. Missouri Pac. Ry. v. Somers, 71 Texas, 700.

*Evans & Elder,* for appellee.—There was legal and competent evidence showing negligence of the appellant proximately causing appellee's injuries, as alleged in the petition and submitted to the jury in the court's charge. McCray v. Galveston, H. & S. A. Ry. Co., 34 S. W. Rep., 96; Missouri, K. & T. Ry. Co. v. Hawk, 5 Texas Ct. Rep., 681; Ryan v. Missouri, K. & T. Ry. Co., 65 Texas, 13.

TALBOT, Associate Justice.—Elijah Smith, a minor suing by his father as next friend, brought this suit against appellant to recover damages for personal injuries alleged to have been received by him through the negligence of appellant's servants. It was alleged, in substance, that appellant owned and operated a creosote plant on its line of railroad near Greenville, Hunt County, Texas, for the purpose of treating its cross ties. That this plant consisted of cylinders, dinkey engines, tramways or railroad tracks, tram cars, engines, pulleys, cables, etc.; that there is constructed on the grounds and right of way a platform and narrow gauge railroad tracks, commonly called tramways, extending from the cylinders alongside of and parallel with appellant's main line of road, a distance of several hundred feet, upon which appellant operated a number of cars known as tram cars, constructed after the order of and similar to the usual hand or push car, for the

purpose of transporting cross ties from a point on the main line or switch tracks, a distance of several hundred feet, to the cylinders and return; that said cross ties were transported by appellant over the main line of its road to said creosote plant, and there loaded on the tram cars, carried to the cylinder and treated, after which they were carried back on the said tram cars over the tramways where they were unloaded either along appellant's tracks or put into its freight cars; that said tramway and tram cars were used in connection with appellant's main line of railroad as an essential auxiliary and aid thereto, and said tram cars were operated over the tramway by means of steam and power and by hand; that when the ties loaded on said cars were treated they were drawn from the cylinders by means of a cable operated by a dinkey engine to a certain point and there taken in charge by a number of employes, who with their hands, by pushing and pulling, propelled them to the other end of the platform; that in drawing said cars from the cylinders onto the platform it was a frequent occurrence for them to be derailed at or about the point where they were carried by the cable, and when so derailed it became the duty of the crew operating the car to replace it on the track and thence propel it to point of destination; that the method of replacing the car was, the foreman of the crew would direct the men, some on one side of the car and some on the other side, with pieces of iron rails to lift the car on one side and to pry it up on the other, and when raised above the track it would be pushed by the men doing the lifting back on to the track. That appellee on July 22, 1904, was engaged in the service of appellant, working at its said creosote plant, and his duty, among other things, was to assist in operating the tram cars; that on said date one of appellant's tram cars, loaded with heavy ties, was derailed and appellee and six other men were directed by the foreman to replace it on the track and propel it by hand to the point of destination; that appellee and three other men who were furnished with a piece of rail placed it under the car for the purpose of lifting it up while two men on the opposite side placed their piece of rail under the car for the purpose of prying it up on that side; that when appellee and the three other men had raised the car for the purpose of shoving it back on the track the whole weight of the car, because of the negligence of one, or both, of the two men who were prying up the car, either by permitting through inattention their rail to slip, or failure to take sufficient hold under the car or channel bar or by negligently slacking up or turning loose the rail with which they were prying, or because the rail or channel bar was defective, in that it was old, worn and out of repair, which caused the rail to slip, etc., the weight of the car was thrown on appellee and the three other men with him, straining, injuring and rupturing appellee on both the right and left side to his damage in the sum of $20,000.

Appellant pleaded general and special demurrers, a general denial, assumed risk, and that if appellee sustained any injuries the same were caused and contributed to by his own want of care or by that of his fellow servants. The case was tried and verdict and judgment rendered for appellee in the sum of $1,750, from which appellant appeals.

Material allegations in appellee's petition were sufficiently established

by the evidence to justify the verdict of the jury. It was shown that the tracks of the tram railroad on which the tram cars were used were 24½ inches wide and about 870 feet long, running near to and parallel with appellant's main line of road; that the rails were made of iron or steel, weighed 35 pounds per yard and 3¼ inches high. The tram cars are built of steel or iron and weighed from 600 to 800 pounds; their width across the top of the standard is 5 feet and 6 inches, and where they run on the rail from wheel to wheel or flange to flange, is just two feet.

Appellant's first assignment of error is, in substance, that the court erred in overruling its ninth special exception to appellee's petition, because the allegations of said petition show that the tram car which appellee was assisting to replace on the tram railway was not a car within the meaning of the fellow servants statute; that he and his colaborers were fellow servants within the meaning of the law and at the time and place of the accident they were not engaged in the work of operating a car.

The principal argument in support of this assignment is to the effect that by "railroad" as used in our fellow servants statute is meant the ordinary railroad with its rails, stretching between the great parts of the country, and by "car" such as are adapted to or capable of and which are in fact, used upon the tracks of such railroads; that the tram railroad and tram car in question by reason of the character of their construction and uses to which they are put do not come, respectively, within the foregoing definitions. We do not regard the assignment well taken for these, or any other reason that occurs to us now. The tram road was constructed in the manner and of similar material used in the building of ordinary railroads and used in aid of as a connecting line, or in connection with appellant's switch tracks or main line or railroad, in getting its cross ties to the cylinders of its creosote plant to be treated and returned to the main line to be used in its repair. The tram car was composed of iron wheels and axles, fashioned after and about the size of a hand or push car, both of which have been held to be a "car" within the meaning of our statute. Mr. Elliott, in his work on Railroads, vol. 3, sec. 1354, says: "The term 'cars' when employed in an employer's liability act may be taken to mean any kind of a vehicle other than a locomotive or tender, used by a railroad company for the transportation of passengers, employes or property upon and along its tracks. The term is not confined to coaches nor to freight cars, but embraces all kinds of cars." This statement, or definition, which we think is correct, has been approved by other courts of this State, and that the tram car in question is such a car as is therein referred to and is a "car" within the meaning of our statute, we have no doubt. That it is too narrow to be operated upon appellant's main line of road is immaterial. It was operated, as larger cars were on the main line, for the purpose of transportating cross ties and doubtless other freight or material, to appellant's creosote plant and was known as, and served the purpose of, a railway car. In Texas & Pac. Ry. Co. v. Webb, 72 S. W. Rep., 1044, in which a writ of error was denied, it was held, that a push car eight or ten feet long and three or four feet wide, used for transporting rock from a quarry, operated by the appellant down

an incline switch track to a rock crusher to be crushed and then carried out and distributed along its main line for ballast, was a car within the meaning of our fellow servant's statute, and that Webb and those employed with him were engaged in the work of operating a car. In speaking of what constituted a car, it was said: "Our statute . . . is not limited to cars of any particular description or capacity, or to those used in any particular kind of transportation or moved by any particular kind of force." We do not think the case under consideration is distinguishable in principle from the Webb case. Indeed, in essential particulars they are strongly analogous. In the construction of the tram car in the one case and the push car in the other, there is practically no difference. They were both operated by hand, the one in transporting rock over a switch track to a crusher to be crushed and then conveyed along the railroad to be used as ballast; the other in transporting cross ties from the railway company's main line of road over a tram road, built for that purpose, to its creosote plant to be chemically treated and then returned to points along said tram road to be loaded in cars on appellant's main road to be used in repairing said road or in building new lines. We will add that no contention is made that the car was not being operated at the time appellee was injured because it had been derailed and was not in motion upon the track. Such contention, however, if made, could not have been maintained. (Railway v. Webb, supra; Seery v. Gulf, C. & S. F. Ry., 77 S. W. Rep., 950.) Our conclusion is that appellee, at the time injured, was engaged in the operation of a car within the meaning and contemplation of our fellow servants statute, and that appellant can not escape liability for the damages sustained by him on the ground that such injuries were inflicted through the negligence of a fellow servant. This question is presented in other assignments relating to the court's charge, and special charges asked and refused, but what has been already said disposes of those assignments adversely to appellant's contention.

But it is contended by appellant that the Act passed by the Twenty-fifth Legislature, approved the 18th day of June, 1897, known as the fellow servants statute of this State, construed, as by the charge of the court, the verdict and judgment in this case it is construed, is contrary to, and in violation of the fourteenth amendment to the Constitution of the United States and void. In this contention we do not concur. The statute in question is not limited in its application to railroads alone. By its very terms it applies to "every person, receiver or corporation that owns or operates a railroad" and affects alike the employes of all corporations, or persons, owning or operating a railroad brought under its influence under the same condition. The car appellee was assisting to operate when hurt was, in our opinion, as much a "car" in contemplation of our fellow servants law as any used by appellant in transporting cross ties or other freight over its main line to the connecting point with the tram railroad, thence to be carried over the latter road on the tram cars to the cylinders of the creosote plant. This construction in no sense subjects said statute to the criticism and objection that it denies to appellant the equal protection of the laws.

By its second, fourth and fifth assignments of error appellant calls in question the sufficiency of the evidence to support the verdict of the

jury in that: "(1) The evidence failed to show any negligence · of appellant as the proximate cause of the accident; (2) the evidence failed to show what, in fact, caused the accident, and the accident itself was not of such character as to make applicable thereto the rule of *res ipsa loquitur.*" We think there was sufficient legal and competent evidence to warrant the conclusion of the jury, as is necessarily embraced in their verdict, that the negligence of appellant's servants, as charged, was the proximate cause of appellee's injuries and that such negligence consisted in some one or all of the grounds alleged in the petition. It may be that the direct evidence did not point out with exactness the very defect in the instruments used in attempting to replace the car on the track, or the particular act of negligence alleged which produced or caused the accident, but there is evidence that the men on the opposite side of the car from appellee prying it up let their rail slip, which threw the weight of the car on appellee and from this fact, the character of the instruments, and method employed in attempting to replace the car on the track, together with all the other surrounding circumstances, and fact of the accident itself, the inference is reasonable and could be fairly drawn therefrom that the accident and appellee's injuries were caused in one or more of the negligent ways alleged on the part of appellant's servants.

Appellant requested the court to charge the jury, which was refused, in substance, that if the channel bars of some of the cars were worn and slick or some of the pieces of rail which were used in replacing cars upon the tram tracks were badly worn or slick at the end or otherwise defective, and appellee knew these facts, or if the channel bar of the tram car (in question) was worn slick and that the piece of rail on the opposite side of the car from appellee was worn and slick and that such condition of either or both combined caused the accident, then appellee assumed the risk of such conditions and could not in either event recover. There was no error in refusing these charges. The evidence shows that appellee did not know that the channel bar of the car which he, with others was trying to replace on the track, or the rails which his coemployes were using, were worn, slick or defective, and the fact that he may have known that the channel bars of some of the cars or some of the rails sometimes used in replacing the cars on the tracks were worn and slick, did not under the facts of this case charge him with an assumption of the risk incident to the undertaking resulting in his injuries. Furthermore, being a minor he did not assume the risk of the accident which caused his injuries, unless in addition to a knowledge of the defects referred to he knew the nature and extent of the danger, and had the discretion to properly weigh his liability to injury from it. The charges under consideration were defective in not requiring the jury to find that appellee had such knowledge and discretion before they could return a verdict for defendant upon this phase of the case. They were properly refused. (Texas & Pac. Ry. v. Brick, 83 Texas, 598.)

We have found no reversible error in the record and the judgment is affirmed.

*Affirmed.*

Writ of error refused.