# DALLAS RAILWAY & TERMINAL COMPANY V. MRS. LETTA M. FARNSWORTH.

No. A-2357. Decided March 8, 1950.
(227 S. W. 2d Series, 1017.)

*Buford, Ryburn, Hincks & Ford, Howard Jensen* and *Frank M. Ryburn, Jr.,* all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that plaintiff was not contributorily negligent as a matter of law in view of the undisputed testimony that she had riden streetcars for 20 years; was familiar with their operation; that the car tracks went only to the left at the intersection, and that plaintiff had at least ten seconds to step from the path of the rear overhang of the streetcar, and yet did not attempt to do so. Dallas Ry. & Ter. Co. v. Rogers, 147 Texas 617, 218 S. W. (2d) 456; Townsend v. Houston Elec., 154 S. W. 629; El Paso Elec. Co. v. Ludlow, 291 S. W. 619.

*White & Yarbrough* and *W. E. Johnson,* all of Dallas, for respondent.

MR. JUSTICE SMEDLEY delivered the opinion of the Court.

The Court of Civil Appeals affirmed a judgment against petitioner, Dallas Railway & Terminal Company, in the sum of $12,518.00, for damages on account of injuries suffered by respondent, Mrs. Letta M. Farnsworth, when struck by petitioner's streetcar immediately after she had alighted from it. 221 S. W. (2d) 981.

By its point of error petitioner presents the contention that there is no evidence to support the jury's findings of negligence on the part of the operator of the streetcar in failing to give respondent an opportunity to get beyond the overhang of the car before starting its turn and in failing to keep a proper lookout for respondent; and by its second point petitioner contends that respondent was contributorily negligent as a matter of law in failing to step from the path of the rear overhang of the car.

The substance of the evidence, most of which is taken from the respondent's testimony and that of witnesses who testified for her, follows: Respondent, a widow, fifty-two years of age, employed in the store of Sears-Roebuck in Dallas, became a passenger, together with her thirty year old daughter and three year old grandson, on petitioner's streetcar to travel from the store on South Lamar Street to the corner of Elm and St.

Paul Streets, a distance estimated by the operator of the street-car to be approximately one mile and by respondent approximately three or four miles. Traveling east on Elm Street, the car stopped when it arrived at St. Paul Street. At that place the car tracks do not extend farther east on Elm Street, but turns to the left and north on St. Paul Street. Although respondent had been a passenger on streetcars in Dallas and in other places oftentimes over many years, she had never been on a streetcar on Elm Street and did not know that the car turned to the left at St. Paul Street, and did not look at the tracks ahead of the car, and she had never observed that the rear end of a streetcar would swing out as the car went around a curve and did not know that it would.

At the place where the streetcar stopped there was a safety zone marked for passengers leaving or entering the car. This safety zone, which was on the south side of the streetcar, was about 49 feet long east and west and 6.7 feet wide, and was marked by a row of metal discs about 1 foot in diameter placed there by the city. Within the safety zone and nearer to the streetcar tracks was a curving row of brass discs .3 of a foot in diameter approximately parallel to the curve of the streetcar rail, which were placed there by petitioner to mark the extent of the overhang of street car. The distance between the small brass discs and the large discs marking the outside of the safety zone varied from 4.2 feet at the west end of the row of brass discs to 2.2 feet at the brass disc farthest east, which marked the place where the greatest overswing of the car occurred. Respondent knew of the large discs which marked the safety zone but she did not notice the small brass discs inside the zone. The traffic is controlled at the corner of Elm and St. Paul Streets by traffic lights, and at the time of the accident, 4 P. M., the automobile traffic on Elm Street was heavy. The streetcar was 50 feet in length.

Eight or ten passengers alighted from the streetcar at its front door. According to respondent's testimony all of the others were ahead of respondent, her daughter and grandchild, respondent being the last passenger to alight. She testified that just as she stepped off the streetcar step within the safety zone the traffic light which she was facing and in the direction that she intended to go, that is, to the south, changed to red, and that before she had time to take a step, almost instantaneously, she was struck and knocked down by the streetcar.

A disinterested witness who was in his automobile directly behind the streetcar at the time of the accident testified that

he saw the car strike respondent and knock her down as it made the turn. He testified further that there were from seven to ten people standing in the safety zone and some of them were in front of respondent, and that there was considerable traffic going both east and west on Elm Street, with a number of automobiles standing in the passage between the safety zone and the south curb of Elm Street waiting for the light to change. He testified that he thought the streetcar started "pretty abruptly" and again that the movement of the streetcar was abrupt. He testified that to the best of his knowledge respondent, before she was struck, had moved approximately 10 feet back from the front door of the streetcar, that is, to the west, adding that he could not see the front door of the streetcar.

A traffic officer of the City of Dallas on duty at the intersection of Elm and St. Paul Streets, standing on the southeast corner, witnesses the accident. He saw the right rear corner of the overhang of the streetcar strike respondent as it went around the curve. He testified that the car "was moving rapidly for that intersection"; that he saw the streetcar start moving forward, saw that respondent was going to be hit and tried to stop the car; that the operator of the streetcar never knew that the accident had occurred until his inspector informed him of it; that when respondent was struck she was standing in the extreme east end of the safety zone; that respondent was facing south and a person was standing in front of her, where she could not move forward on account of the traffic, and another person was standing to her right, and that she could not move to her left because she was at the extreme east end of the safety zone and "the law says you must stay in the safety zone until the light changes." He testified further that there were approximately ten seconds between the time when he saw respondent standing there and the time when the streetcar struck her.

The operator of the streetcar testified that as he closed the door of the car immediately before starting he looked to his right, saw that the door was clear, and saw no one within reach of the door or within reach of the overhang of the streetcar, and that there was no one "at the point of my front door within the overswing zone"; and that after he closed the door and started the streetcar he never looked back to his right or to the back of the streetcar, his attention being given to watching the traffic traveling west on Elm Street and the pedestrians who were crossing St. Paul Street. His testimony shows that he knew nothing about the accident until he had traveled to the end of the line and returned to Elm and Ervay Streets, where

he was told of it by the company's supervisor. He testified further that he was not in a hurry on that particular day and that in making the start at the corner of Elm and St. Paul Streets he operated the car normally and traveled at approximately 1 to 2 miles an hour around the curve.

■ It should be sufficient, without discussing at length the evidence above set out, to express our opinion that it makes issues of fact as to primary negligence on the part of the operator of the streetcar and contributory negligence on the part of respondent. In other words, there is some evidence to support the jury's finding that the operator was negligent in failing to give respondent an opportunity to get beyond the overhang of the car and some evidence to support the finding that respondent was not negligent in failing to step from the path of the car's overhang. The evidence, or part of it, as to negligence on the part of the operator is respondent's testimony that she was struck by the streetcar before she had time to take a step, almost instantaneously, after she alighted, the testimony of another witness that the movement of the car was abrupt and of another that the car "was moving rapidly for that intersection." This same evidence and respondent's testimony that she did not know that the streetcar tracks turned to the left or that the rear end of the car would swing out as it went around a curve, together with the testimony of another witness that when she alighted a person was standing in front of her and another to her right, creating a situation where she would be impeded or delayed in moving, amount to some evidence that she was not contributorily negligent.

Since there was evidence to support the issue as to the operator's negligence in starting the car too quickly, it is not necessary to discuss the finding that he failed to keep a proper lookout for respondent. In view of petitioner's reliance upon Dallas Railway & Terminal Co. v. Rogers, 147 Texas 617, 628, 218 S. W. (2d) 456, and the argument that the operator of the car could not divide his attention and watch at the same time for passengers who had alighted from the car and for pedestrians in the cross-walk to his left and ahead of him, it is appropriate to observe that the existence of the duty imposed by the ordinance discussed in the Rogers case to yield the right of way to pedestrians, and consequently to look for them, would not relieve the operator of the duty before starting and at the very time of starting the car to use care in observing the position of passengers who had alighted from the car in order to save them from being struck.

■ Respondent was permitted to testify, over objections, that when she entered the streetcar at the Sears-Roebuck store on Lamar Street the operator started the car before she could get to a seat and was in a great hurry, that he stopped at Lamar and Young Streets and passengers "scarcely got off before he started", and that the same was true at Lamar and Main Streets. This testimony when first considered may appear to be forbidden by the general rule announced in Missouri, K. & T. Ry. Co. ·v. Johnson, 92 Texas 380, 382, 48 S. W. 568, that "when the question is whether or not a person has been negligent in doing or in failing to do a particular act, evidence is not admissible to show that he has been guilty of a similar act of negligence or even habitually negligent upon a similar occasion." The reason for the rule is the fundamental principle that evidence must be relevant to the facts in issue in the case on trial and tend to prove or disprove those facts, evidence as to collateral facts not being admissible. 20 Am. Jur., p. 278, Sec. 302. There are some modifications of the general rule as applied to particular cases. It has been said that evidence of similar transactions or *conduct on other occasions* is not competent to prove the commission of a particular act charged *"unless the acts are connected in some special way, indicating a relevancy beyond mere similarity in certain particulars."* (Emphasis added.) 20 Am. Jur. pp. 278-279, Sec. 302.

Cunningham v. Austin & N. W. Ry. Co., 88 Texas 534, 31 S. W. 629, recognized in Missouri, K. & T. Ry. Co. v. Johnson, 92 Texas 380, 48 S. W. 568, as a modification of the general rule is very closely in point here. In that case the negligence charged against a railway company was failure of its inspector to inspect a car wheel, and there was an issue as to the inspector's competency. The court held admissible testimony offered for the purpose of proving that the inspector had failed to inspect the wheels of the company's trains on several days a short time subsequent to the date of the accident. In so holding, the court said that evidence of the failure of the employee to perform this duty at different times tended to prove his mental condition or quality, that is, that he was inattentive and thoughtless and that "such mental quality was a relevant fact upon the issue as to whether he probably inspected the cars on the particular morning of the accident."

In the case before us testimony that the operator of the streetcar hurried his starting of the car, after making three stops a short time before the accident in which respondent was injured, tended to prove the state of his mind or the condition

of his nerves, that is, that he was in a hurry, and so was relevant and of some probative value on the issue as to whether he failed to give respondent an opportunity to get beyond the overhang of the car before starting it. See also Harsbarger v. Murphy, 22 Idaho 261, 125 Pac. 180, 44 L. R. A. (N. S.) 1173. The three stops about which respondent testified over objection were made on the same run as that on which she was injured, and occurred within a distance of one mile, or three or four miles, from the place where she was injured, and within seven to ten minutes of the time of her injury. They were not so far removed either in place or in time as to be considered "conduct on other occasions", but were so closely related to the occurrence on which this suit is based that they may be considered, as in effect, part of the conduct of the operator that caused respondent's injury. We believe that the testimony was relevant and admissible.

■ Another point is presented as to the admission of evidence. The operator of the streetcar, after having testified on cross examination that he did not strike another person on the same day and at the same place, was asked by counsel for respondent: "You know nothing about another person getting hit there?" He answered: "All I know about another person getting hit there was a newspaper story." Thereupon counsel for petitioner made the following objection, which was overruled by the court: "We object; that is wholly immaterial and prejudicial. Anything that appeared in the newspaper or any testimony about it is inadmissible, and we except to it and ask the court to instruct the jury not to consider it." In view of the answer given, the fact that it was not responsive to the question and the merely general objection made, it is our opinion that reversible error is not shown. The bill of exception states that when counsel for respondent asked the question he held in his hand within plain view of the jury, but not where the jurors could read it, a clipping from a newspaper. It is further shown, however, that no objection was made to counsel's conduct in holding the clipping before the jury.

Two points assert error in portions of the argument made by respondent's counsel to the jury. After consideration of the argument complained of, the objections made to it and the court's rulings on the objections, it is our opinion that the Court of Civil Appeals correctly held that these points do not present reversible error.

■ The application for writ of error was granted on a point

that assigns error on the part of the Court of Civil Appeals in holding that even though the verdict was excessive, it had no authority to require a remittitur in the absence of extraneous evidence showing passion or prejudice on the part of the jury. Petitioner inists that this point correctly expresses the decision made by the Court of Civil Appeals with respect to excessiveness of the verdict and authority to require remittitur. On the other hand, respondent's contention is that the Court of Civil Appeals did not so hold but that it considered the question of excessiveness and determined from the entire record that the verdict was not excessive to such an extent that the court would be justified in disturbing the jury's findings. If respondent's construction of the ruling made by the Court of Civil Appeals is correct, this Court has no jurisdiction to review the decision of the Court of Civil Appeals as to the excessiveness, it being the decision of a question of fact. If petitioner's construction is correct, then a question of law, of which this Court has jurisdiction, is presented as to the correctness of that court's action in refusing to require a remittitur on account of the absence of extraneous evidence of passion or prejudice. Wilson v. Freeman, 108 Texas 121, 185 S. W. 993; Southland Life Insurance Co. v. Norton, (Com. App.) 5 S. W. (2d) 767.

The opinion of the Court of Civil Appeals, in discussing the amount of the verdict, contains the following: "Under the foregoing detail of disability as a result of injury, even from standpoint of plaintiff, the amount of recovery is quite large— too large, we think—but we are referred to no method whereby the excess can be reached without some showing of prejudice on the part of the jury which we do not find." Following this quoted sentence the opinion makes reference to Rule 440 as to remittitur, then quotes from and cites cases stating the rule that a verdict can be disturbed by a Court of Civil Appeals as excessive only when, by its amount compared with the injury suffered it is manifestly not the result of a sound discretion temperately exercised, but of passion and prejudice. The conclusion is then expressed in the opinion that since the record suggests a rather careful weighing of evidence by the jury, the point complaining of excessiveness must be overruled.

While it is difficult to determine with certainty the basis of that court's conclusion that the point complaining of excessiveness must be overruled, we are inclined to believe that petitioner's construction of the meaning of the opinion is correct, that is to say, that the court found that the verdict was ex-

cessive, but declined to require remittitur because it found in the record no evidence other than the amount of the verdict that showed prejudice on the part of the jury.

Rule 440, Texas Rules of Civil Procedure, (formerly Article 1862 of the statutes) is as follows:

"In civil cases appealed to a Court of Civil Appeals, if such court is of the opinion that the verdict and judgment of the trial court is excessive and that said cause should be reversed for that reason only, then said appellate court shall indicate to such party, or his attorney, within what time he may file a remittitur of such excess. If such remittitur is so filed, then the court shall reform and affirm such judgment in accordance therewith; if not filed as indicated then the judgment shall be reversed."

The rule contains no language suggesting that when the Court of Civil Appeals is of the opinion that the verdict of the trial court is excessive and that the cause should be reversed for that reason only, it cannot require remittitur unless it finds in the record evidence other than that afforded by the amount of the verdict that the jury in fixing the amount was influenced by passion or prejudice. We believe that under this rule a Court of Civil Appeals may require remittitur when, after consideration of the amount of the verdict and the evidence bearing upon the amount, it finds that the verdict is excessive and that the cause should be reversed for that reason only. The amount of the verdict itself, when considered in the light of the evidence in the record, may be enough to convince the Court of Civil Appeals that it was the result of passion or prejudice or other improper motive or was in disregard of the evidence. In our opinion there need not be extraneous proof of passion or prejudice on the part of the jury. Indeed, it would be in many cases very difficult and often impossible to make that proof. The foregoing conclusions find support in Judge Martin's opinion, adopted by the Supreme Court, in World Oil Co. v. Hicks, 129 Texas 297, 103 S. W. (2d) 962.

The judgment of the Court of Civil Appeals is reversed and the cause is remanded to that Court for further consideration of the assignments of error as to excessiveness of the verdict.

Opinion delivered March 8, 1950.

No motion for rehearing filed.