**BLUEBONNET EXPRESS, INC., Appellant,**

v.

**Percy FOREMAN, Appellee.**

**No. 116.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

June 26, 1968.

Rehearing Denied Sept. 4, 1968.

**46**

---

Gay Brinson, Jr., Vinson, Elkins, Weems & Searls, Houston, for appellant.

Joseph D. Jamail, John Gano, Houston, for appellee.

BARRON, Justice.

This is a suit for damages brought by plaintiff, Percy Foreman, against Bluebonnet Express, Inc., and Junior Horace Marsh, driver of the truck involved, both defendants, for personal injuries alleged to have been sustained by Foreman on May 23, 1962 in a rear-end collision between his vehicle and a truck owned by Bluebonnet Express, Inc. The defendant, Marsh, did not answer and an interlocutory default judgment was entered against him. At the trial with the aid of a jury, Bluebonnet Express, Inc. admitted liability, and the case was submitted to the jury on damages for medical expenses, pain and suffering and mental anguish only. Upon the jury's answers to special issues, judgment was entered by the trial court for Foreman in the sum of $74,850.00. Following a hearing on motion for new trial, the trial court ordered a remittitur of $14.00 and otherwise overruled the motion. From the trial court's overruling of the

motion for new trial, this appeal has been duly perfected by Bluebonnet Express, Inc., as appellant against Foreman as appellee.

The case is appealed on two points of error, the first point being that the trial court erred in refusing to grant a remittitur where damages awarded for future medical expense in the amount of $7,850.00 were excessive by at least $5,000.00, and the second point being that the trial court erred in refusing to grant a remittitur where damages awarded for pain and suffering and mental anguish in the amount of $65,000.00 were excessive by at least $50,000.00.

The accident happened around 12:00 o'clock at night two-tenths of a mile east of Post Oak Road on Memorial Drive in the City of Houston. Appellee's 1960 Thunderbird was struck in the rear by appellant's truck, and the impact was hard. The automobile, as the result of the collision had a bent axle, bent frame, and the doors buckled on both sides. Appellee testified that everything suddenly went black and then bright, like stars shooting, and he testified that he had a temporary blackout. Soreness in his neck and back resulted within two or three hours. The next day he went to Dr. Joseph Robertson, a Houston physician who examined him at his office and then examined him at Methodist Hospital. His back, shoulders and neck were carefully examined by Dr. Robertson, and at that time appellee had a great amount of pain. Since that time, May 24, 1962, appellee has been in the hospital in Houston about six times and has talked with Dr. Robertson regarding his condition a number of times. Also, he has been in the hospital and has had treatment for his neck and back in Miami, Oklahoma City, Sioux City and Chicago. He has received heat therapy, traction, medication, heat baths and various other forms of treatment at all of the places. Foreman testified that he has been in pain almost constantly since the accident except when he is moving, and if he sits

as long as two or three minutes the pain starts again. If he keeps sitting and does not move the pain gets greater as time passes. He has not slept longer than an hour at a time since the accident except when he was in a hospital where he received medication to keep him asleep the full night. Partial relief is obtained by using traction and heating pads. He has taken "pain killers" about every two hours during the night. He builds up a tolerance for the drugs and is required at intervals to change to another type of medication. He testified that the lack of rest and the pain make him highly nervous and irritable to the extent that he is required to schedule important conferences for early in the mornings or not later than 10:00 o'clock in the morning. As the day goes on, he testified, he gets more short-tempered and more intolerant due to the pain, and he testified that he never had that trouble before the accident. In important cases he invariably engages some other lawyer to deal with his clients because of his nervous condition. Appellee carries traction with him, but his use thereof never gives relief from pain for longer than 45 minutes to an hour. He is required to take sleeping aids such as seconal, norflex or noctec. The pain is greater and more intense at night. His injuries are located "at the base of my neck where it joins the shoulders and into the spine, and also the right shoulder is worse than the left, but both shoulders and in the small of the back also." Appellee also has a condition known as diabetes mellitus, which he states is mild and does not bother him. He is overweight and attempts to control his weight at regular intervals. He is concerned with his injuries and he invariably rests and has a special chair in his office for the purpose of rest with no telephones, where he relaxes before he goes home in the evening, so he will not be irritable with his wife and young child. He testified that the pain, instead of getting better, has gotten worse from month to month and from year to year.

On cross-examination, appellee stated that he had practiced law about six hours a day more since the accident, because he has practiced law at night. He works during the time he is not sleeping at night and "I work on my client's cases, and I do that because I can't rest and if I am not resting I—I work." Since the accident he has tried the Sizemore, Vaughn, Hudson, Mossler and other important cases, many of them taking several weeks to try, and he has been active also in making speeches to various groups over the nation. He testified that he had had no difficulty physically from 1948 until the accident and that he had never had pain in the upper part of the spine until the accident. He had, however, pain in the lower back many years ago when a horse fell on him, but he stated that he recovered in a short time.

Dr. Joseph Robertson, specializing in neurosurgery and who is shown to be a thoroughly qualified physician, saw Mr. Foreman on the afternoon of May 24, 1962, in the emergency room at Methodist Hospital in Houston. Foreman was complaining of his neck where he had quite a lot of pain. The pain had become progressively worse in less than a 24-hour period of time, and the pain was limited to the neck and back and between the shoulder blades in the back. His neurological study was noted and there were no abnormalities. There was no impairment of his central nervous system and its function. On examination his neck was limited in all cardinal ranges of motion and this was due to pain in his neck. Pain over the cervical spine in the mid-portion and over the muscles of the neck in the back, and the X-ray examination at that time revealed that appellee had osteoarthritis that was of a relatively marked degree. This condition was usual in a man of appellee's age, and in most instances it causes no discomfort. Loss of the lordotic curve in the neck was attributed to the shortening of the muscles due to over-stretching, and such was attributed to the accident. There is no way to predict how long such

a condition will last. The doctor stated that pain will produce fatigue and nervousness, making the muscles tighter because it is normal to tighten the muscles when one is tired or tense, and one condition aggravates the other. He verified that appellee had been in the hospital with this difficulty six times in Houston. His hospital bills amounted to a total of $1,986.40 for the six hospital admissions, and such sum was reasonable and necessary. Dr. Greene or Dr. Dobson treated Foreman for his diabetes mellitus, a disease where the individual is unable to handle the metabolism of carbohydrates—sugar diabetes as it is commonly referred to. Such condition can cause no pain in the neck or back. But Foreman was admitted to the hospital on each occasion for pain in his neck or back. He attributed the straining of the muscles to the accident, and stated that it had been coming and going since he first saw him in 1962. Dr. Robertson stated that future medical care would be necessary by reason of his neck and back injury, and that he would need hospitalization at least one time a year, at a cost of about $600.00 per year, plus from $150.00 to $200.00 for doctor bills. Such charges would be related to appellee's neck and back injuries. The witness stated that he did not believe a patient could go for a long period of time and perform work very well with the symptoms and the findings which the patient had. He expressed an opinion that the matters for which he had seen Foreman on multiple occasions and the findings that have been found on those occasions and the symptoms of which appellee was complaining in between, have been related to an injury Foreman described occurring the day before he saw him on the first occasion in May of 1962; that the appellee has osteoarthritis of the cervical spine demonstrated by the X-rays taken, and in addition to this there is a diagnosis of a straining injury of the cervical muscles and of the ligamentous structure called cervical strain. Further, there was a strain in the back, of which he had complained on one occasion, and symptons of injury in his low back. The treatment he prescribed is as outlined above. His injuries are calculated to cause pain and discomfort, and such pain and discomfort will occur in the future. The doctor stated that he did not know whether appellee would ever get over his present injuries, but that from the experience he has had with him since 1962, he doubted whether Foreman would ever be completely rid of such injury, including the pain; that the patient worries about himself, and such worry aggravates his condition of pain, nervousness, tenseness and irritability. Prior hospital records from 1955 show that appellee had complained before the accident of the area of the neck, and that a cervical disc syndrome had been provisionally diagnosed before the accident. But appellee stated that he had no pain as a result thereof. There is further evidence from the hospital records that he had suffered from fatigue and had complained of insomnia before the accident. Dr. Robertson stated that it was important to know of these prior difficulties, including the fact that a cervical disc syndrome had been diagnosed in the past. A syndrome was explained to be a group of symptoms. But the doctor stated definitely that while Foreman may have had a diagnosis of a cervical syndrome in the past, he found that Foreman had no evidence of a cervical disc syndrome at the time of trial, nor in his examination in 1966, nor at his examination of him in 1962. He now has cervical osteoarthritis and has a strain of the cervical musclelature, which from the doctor's experience is now a chronic condition. The record shows that the accident was a producing cause of appellee's injuries at the time of trial, which was the cause of appellee's pain, disability and discomfort. The life expectancy of appellee was shown to be about 16 years.

Appellant offered no medical testimony and offered no evidence whatever except that produced on cross-examination.

Only three special issues were submitted to the jury, inquiring as to medical care, hospital and drug expense which appellee has incurred in the past; medical care, hospital and drug expense to be incurred in the future, and physical pain, suffering and mental anguish in the past and in the future. The jury answered $2,000.00, $7,850.00 and $65,000.00 respectively, making a total recovery after the $14.00 remittitur ordered by the trial court of $74,836.00.

We have given this case serious consideration, and while the recovery for the pain and mental anguish allegedly suffered by appellee appears to be rather large, if there is any reason in the jury's verdict, and if we believe that the jury actually considered the evidence and the lawful inferences therefrom and was not influenced by passion, prejudice or partiality, it is our duty to affirm the judgment. It is, of course, our further duty to view the evidence and inferences in support of the award in the light most favorable to the award of the jury. Green v. Rudsenske, 320 S.W.2d 228, 235 (Tex.Civ.App.), no writ; Louisiana & A. Ry. Co. v. Chapin, 225 S.W.2d 614, 616 (Tex.Civ.App.), writ ref.; Wells v. Henderson, 78 S.W.2d 683, writ ref. The appellant has the burden of establishing that the jury's evaluation of the damages was erroneous. City of Austin v. Selter, 415 S.W.2d 489, 502 (Tex.Civ.App.), writ ref., n. r. e. And it is difficult, if not impossible, to appraise another's pain and suffering and the extent thereof. City of Houston v. Moore, 389 S.W.2d 545 (Tex.Civ.App.), writ ref., n. r. e.; Gilbert v. Haigler, 363 S.W.2d 337 (Tex.Civ.App.), writ ref., n. r. e.

While we might disagree with the jury as to the amount of the award in this case, yet that function is not for us but lies exclusively within the province of the jury, and we will not disturb the award unless we believe that it was motivated as above stated, or that it is irrational or so excessive as to shock the conscience of this court. Pioneer Bus Co. v. Ward, 422 S.W. 2d 550 (Tex.Civ.App.), no writ; Lackey v. Perry, 366 S.W.2d 91, 96 (Tex.Civ.App), no writ; Dallas Transit Co. v. Hammer, 404 S.W.2d 85 (Tex.Civ.App.), no writ.

Appellee is a busy and active trial attorney who works many hours daily in connection with ordinarily difficult legal and trial problems. His injuries are calculated to cause intense pain. The pain and anguish interfere with his sleep and interfere with his work. He will, from the evidence, have this pain into the future as a result of the accident involved, and his doctor doubts that he will ever be rid of it. Such pain usually makes one tense and nervous, and it causes him to worry about himself and his physical condition and to become concerned and anxious. Appellee's condition is chronic, persisting or lasting, and the pain is a result of the injury he described as occurring in May, 1962. Appellee happens to be well-known, and his activities both professionally and personally are highly publicized. But we must view the evidence as we would view it regardless of the reputation and personality of appellee, and we cannot say that the verdict is excessive simply because the appellee is Percy Foreman. The nature of his work and his profession and his grinding activity may cause such pain and disability to be more intense and disabling than would ordinarily be true. At least the jury had the right so to believe. In any event the question was for the jury, as was the credibility of the testimony and the weight to be given thereto. There is no evidence of passion, prejudice or partiality in the record. It is not our prerogative to strike down the evidence and the findings on grounds of credibility or disbelief.

Believing that the facts reasonably support the verdict of the jury, we decline to order remittitur. Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835; Dallas Ry. & Terminal Co. v. Farnsworth, 148 Tex. 584, 227 S.W.2d 1017. See also Texas Consol. Transp. Co. v. Eubanks, 340 S.W.

2d 830 (Tex.Civ.App.), writ ref., n. r. e.; Bee Line Coaches v. Folterman, 207 S.W. 2d 986 (Tex.Civ.App.), writ ref., n. r. e.; Fort Worth & D. C. Ry. Co. v. Gifford, 252 S.W.2d 204 (Tex.Civ.App.), no writ.

The judgment of the trial court is affirmed.