## Marjorie CAHILL, Appellant,

v.

## D.M. LYDA, et al., Appellees.

No. 3–88–236–CV.

Court of Appeals of Texas, Austin.

Jan. 23, 1991.

Opinion on Motion for Rehearing Aug. 28, 1991.

D.L. Hughes, McGinnis, Lochridge & Kilgore, Austin, for appellant.

W.R. Stump, Stump & Stump, Georgetown, for appellees.

Before POWERS, GAMMAGE and JONES, JJ.

## ON REMAND

POWERS, Justice.

Marjorie Cahill sued the record owners of a 15.332–acre tract of land to establish in herself a prescriptive title under the ten-year statute. Tex.Rev.Civ.Stat. § 1, art. 5510, at 1554 (1925) [since repealed, now codified as amended as Tex.Civ.Prac. & Rem.Code Ann. § 16.026 (1986 and Supp. 1991)].[1] The trial court concluded she did not establish the elements of her claim, and rendered judgment accordingly. In Cahill's appeal, she brings two points of error: (1) that she established the necessary elements as a matter of law; and (2) that the trial court's failure to find the necessary elements was contrary to the great weight and preponderance of the evidence. We will affirm the judgment below.

## THE CONTROVERSY

In 1933, L.C. Cahill purchased from M.W. Rutledge a tract of land comprising 177 acres, according to a description set out in Rutledge's conveyance. An old fence surrounded the tract at the time of the purchase, having been erected at an uncertain time by unknown persons for an unknown purpose. The fence corresponded generally with the metes and bounds description of the 177–acre tract, but on the east side the fence enclosed an additional and adjacent 15.332 acres. No interior fence divided the 177–acre and 15.332–acre tracts, and nothing else on the ground marked a boundary between them.

L.C. Cahill married Marjorie Cahill in 1943. They lived thereafter in a dwelling situated on a five-acre parcel within the 177–acre tract but outside the smaller tract of 15.332 acres. L.C. Cahill died in 1975, and his interest in the 177 acres passed by will to Marjorie. She filed the present suit in 1980, claiming against numerous individuals and their unknown heirs a prescriptive title to the 15.332–acre tract under the ten-year statute.[2] We shall, for convenience only, refer to the defendants as the "record owners."

Trial was before the court without a jury. Only Marjorie adduced evidence. At the conclusion of the evidence, the trial court declined to find that Marjorie had proven any facts from which the trial court could conclude that she had established the elements of her claim under the ten-year statute. She appealed to this Court, contending she had established such elements as a matter of law, and alternatively, that the trial court's refusal to find the elements of her claim was against the great weight and preponderance of the evidence.

In our first opinion, we sustained Marjorie's first point of error because, in our view of the evidence she adduced, she had made a prima facie case regarding her claim to a prescriptive title; she was, there-

---

1. The record owners and their unknown heirs were served citation by publication, and the trial-court judgment declares that all "parties" appeared and answered in the case, in person or by attorney, after being "duly and legally cited to appear." Some of the record owners were represented by an attorney engaged by them for the suit; others were represented by an attorney ad litem appointed by the court. For convenience, however, we shall refer to the parties opposing Marjorie as the "record owners."

2. Tex.Rev.Civ.Stat. § 1, art. 5510, at 1554 (1925) [since repealed, now codified as amended as

Tex.Civ.Prac. & Rem.Code Ann. § 16.026 (1986 & Supp.1991)]. The statute at the time of trial provided in relevant part:

Any person who has the right of action for the recovery of lands, tenements or hereditaments against another having peaceable and adverse possession thereof, cultivating, using or enjoying the same, shall institute his suit therefor within ten years next after his cause of action shall have accrued, and not afterward....

\* \* \* \* \* \*

fore, entitled to judgment as a matter of law when her evidence was not opposed by any contrary evidence and not impeached or contradicted by her own evidence. Because we sustained her first point of error, it was not necessary to decide her second point of error.

On writ of error, the Supreme Court of Texas reversed our judgment, holding that Marjorie's undisputed evidence did not show an actual and visible appropriation as a matter of law, considering all such evidence. While the court must have considered all the evidence, it referred only to its determination regarding the following matters: (1) the Cahills' payment of taxes, standing alone, was not sufficient to establish her claim; (2) no case had been found "that establishes whether or when modification [of a fence to make it a 'designed enclosure'] requires a finding of adverse possession as a matter of law"; and (3) even though the evidence showed the Cahills had cleared and sold cedar trees from the land, Marjorie could not verify whether the trees had been taken from the disputed tract, but even if she could, one isolated commercial sale and a "selective clearing" of land for grazing purposes is not sufficient to show adverse possession over a ten-year period as a matter of law. *Rhodes v. Cahill*, 802 S.W.2d 643 (Tex.1990). While the court referred expressly only to the foregoing, we must assume the court considered the cumulative effect of all Marjorie's evidence and an orchestration of all the factors shown by that evidence.

In any event, the Supreme Court remanded the cause to us for consideration of Marjorie's alternative point of error in which she contends the trial-court judgment is against the great weight and preponderance of the evidence. We turn now to that issue.

## WHETHER THE TRIAL–COURT JUDGMENT IS AGAINST THE GREAT WEIGHT AND PREPONDERANCE OF THE EVIDENCE

The proper scope of appellate review, concerning Marjorie's second point of error, is not free of complexity in theory or in practice. We should give our views in the matter.

■ The trial court *declined* to find from the evidence the ultimate facts necessary for Marjorie to sustain her claim to a prescriptive title. In other words, the trial court "found" no facts at all; it declined, rather, to find *any* facts from the evidence adduced. In the practice, nevertheless, Marjorie's point of error is classified as a "factual insufficiency" point of error.

■ Marjorie carried the burden of proof. She was obliged to adduce evidence and persuade the trial judge, as the trier of fact in this instance, concerning the ultimate facts necessary to sustain her claim to a prescriptive title under the ten-year statute. She assails on appeal the trial judge's choice not to infer the necessary ultimate facts from her undisputed evidence. In this situation, her point of error amounts to a contention that the nature and quality of her evidence, in the absence of any contrary or impeaching evidence, in justice compelled the trial court to infer the elements of her cause of action, even though these were not established "as a matter of law." 4 McDonald, Texas Civil Practice § 18.14, at 318 (rev. ed. 1984).

■ The issue thus presented to us is one of fact, but a delicate one pertaining to the proper division of power between the trial and appellate court: we must not invade the province of the trial court as the original fact finder, yet we must not abdicate our assigned appellate function and permit a wrong to be accomplished. *Id.* at 319. "It is drawing a rather fine line to say that the verdict was one which reasonable minds could reach, but at the same time was clearly the product of something other than reason. Yet this is the law since long ago." Garwood, *The Question of Insufficient Evidence on Appeal*, 30 Tex.L.Rev. 803, 813 (1952). We are indebted to Judge Garwood for the analysis we now employ.

■ How may a court of appeals assess whether the trier of fact, the trial judge in

this instance, reached a decision on the facts that was simultaneously a decision "which reasonable minds could reach" and yet "clearly the product of something other than reason"? While acknowledging its imperfection, Judge Garwood suggested a "subjective approach." The court of appeals should place itself in the position of the trial-court fact finder, then ask itself whether it would have reached the same decision, from the evidence, as did the actual fact finder in the case. If the answer is "yes," the trial-court judgment obviously stands. If the answer is "no," the court of appeals should ask itself whether the actual fact finder's contrary decision must "have been actuated by prejudice, sympathy or other incorrect motive, ... and, if so, why"? In making its assessment, the court of appeals might consider a variety of factors, such as: the apparent character of the witnesses and the consistency of their testimony; any inherent or generally accepted probabilities and improbabilities; any notorious facts of life and history; whether the evidence was direct or only circumstantial; the positive character of proof on one side versus the exclusively negative character of proof on the other; and so on. One relevant consideration is this: the court of appeals "probably should be less reluctant to remand for a new trial" when the facts are found originally by the trial judge than the appellate court "would be if a jury verdict were involved." *Id.* at 811–13.

■ In our first, unpublished opinion, we reviewed at some length the evidence adduced by Marjorie, noting the absence of any contrary or impeaching evidence. In view of the conclusion we reach below, another summary of the evidence can serve no useful purpose. Suffice it to say that in our view Marjorie established a very strong case indeed concerning the elements of her claim to a prescriptive title under the ten-year statute. Had we been the original trier of fact, we would *not* have reached the decision reached by the trial judge as the trier of fact in this instance. We are left then to ask ourselves whether the trial judge's contrary decision must "have been

actuated by prejudice, sympathy or other incorrect motive, ... and, if so, why"? We cannot infer that the trial judge was actuated by any motive of that kind. We hold accordingly and overrule Marjorie's second point of error.

## COURT COSTS AND THE FEES OF THE ATTORNEY AD LITEM

In connection with this, our second consideration of the appeal, the record owners complain anew regarding court costs and the fees of the attorney ad litem. The matter is quite involved; we trust we will be forgiven if we refer to it in some detail. We do so in chronological order.

### In the Trial Court

The provisions of Tex.R.Civ.P.Ann. 244 (1976) oblige a trial court to appoint an attorney ad litem to represent a defendant when service of citation is made by publication and the defendant does not appear within the prescribed time. In the present case, the record owners and their unknown heirs were served with citation in this manner. When they failed to appear within the prescribed time, the trial court appointed an attorney ad litem for them.

Rule 244 also contains this provision: "The court shall allow such attorney [ad litem] a reasonable fee for his services, to be taxed as part of the costs." The final judgment orders that the attorney ad litem be paid an unspecified sum from the proceeds obtained from the sale of the tract in dispute, which occurred in the course of the litigation, the balance of the proceeds being paid to the record owners according to their respective ownership interests in the tract as these were determined in the judgment. For reasons that will be discussed hereafter, it appears that the attorney ad litem was paid, as the judgment directed, for his work in the trial court. The judgment concluded by ordering that the costs be "taxed against the parties in proportion to their respective interests in the property, the subject of this suit."

The provisions of Tex.R.Civ.P.Ann. 622 (1967) direct the clerk of the trial court to "tax the costs in every case in which a final

judgment has been rendered." The appellate record in the present case includes the clerk's bill of costs. It does *not* include, however, *any* sum designated as a fee for the attorney ad litem.

So far as we have been able to determine from the appellate record, the fee for the attorney ad litem was *never* a disputed matter in the trial court.

### In the Court of Appeals

Marjorie appealed to this Court from the trial-court judgment awarding title to the record owners and a distribution to them of the designated shares of the sales proceeds. The record owners did not appeal from any aspect of the judgment below; rather, they prayed in their brief that it "be in all things affirmed." In our first opinion, we reversed the trial-court judgment and rendered judgment awarding title to Marjorie, based on our holding that she had established her prescriptive title as a matter of law when: (1) she adduced a prima facie case; and (2) her evidence was not opposed by any evidence (the record owners adduced no evidence at trial) and not contradicted or impeached by her own evidence.

In this Court, we taxed the *costs of the appeal* against the record owners, pursuant to the requirements of Tex.R.App. P.Ann. 89 (Pamph.1990), which provides that, on reversal of a trial-court judgment, the appellant shall be entitled to the "costs occasioned by such appeal," provided that nothing in the Rule "shall be construed to limit or impair the power of the court of appeals to otherwise tax the costs for good cause."

In their motion for rehearing in this Court, the record owners assigned five points of error, two of which pertained to court costs and the fees of the attorney ad litem. They stated first that we had "erred in assessing costs against the unknown heirs, as no personal judgment can be rendered against the unknown heirs for costs"; they stated second that we had "erred by *declining* to remand the case to the trial court for assessment of attorney fees for attorney ad litem's representation

of the unknown heirs." The two points were briefed together.

The record owners argued in substance that Rule 244 imposed upon the *trial court* a mandatory duty to allow the attorney ad litem a reasonable fee, to be taxed as costs; consequently, this *impliedly* imposed upon the court of appeals a mandatory duty to remand the cause *on its own initiative* to the trial court in order that the attorney ad litem might recover a sum *for the work done by him on appeal*. The record owners acknowledged in their brief "that there exist no prior pleadings invoking this Court's jurisdiction with regard to prospective payment of the attorney ad litem's fees." *In this manner, there arose for the first time in the case the matter of the fees and expenses of the attorney ad litem.*

The adjudging of costs in the cause had never been questioned in the trial court. Any error in that regard "is inherent in the judgment and must be assigned and properly brought up on appeal as any other alleged error in the case." *Reaugh v. McCollum Exploration Co.,* 140 Tex. 322, 167 S.W.2d 727, 728 (1943). Because the record owners conceded this had *not* been done, we were obliged to view their motion for rehearing as a request that we determine as an *original* matter the amount of a reasonable fee for the attorney ad litem's appellate work and award that sum as part of the costs on appeal. We were, of course, required to reject that claim for want of authority to do the thing requested. Accordingly, we overruled the motion for rehearing.

### In the Supreme Court

The record owners applied to the Supreme Court for writ of error. They included in their application two points of error. The first complained of our decision on the merits, in which we held that Marjorie had established her prescriptive title as a matter of law. The second complained that we "erred in assessing costs against the unknown Defendants cited by publication." The matter of the attorney ad litem's fee for his appellate work and his

expenses in that regard was raised in the Supreme Court under this second point of error.

In their argument under their second point of error, the record owners again conceded that no previous pleading in the case had invoked their claim for a fee for the attorney ad litem's appellate work; and they argued again their theory that the mandatory duty imposed upon a trial court, by Rule 244, imposed an implied duty upon an appellate court to remand the cause, on its own initiative, to the trial court for the calculation, award, and taxing of such a fee as costs. They prayed that the Supreme Court remand the cause "to the trial court in order that the costs, including any future fees incurred by the ad litem, can be assessed in such a way as to comport with Rule 244."

Apparently, the Supreme Court rejected at least a part of the record owners' request and theory. That court did *not* remand the cause to the trial court for the determination of a reasonable fee and its award. Instead, the Supreme Court remanded the cause to this Court, after reversing our judgment on the record owners' first point of error.

In its opinion, however, the Supreme Court discussed the matter of the attorney ad litem's fee and expenses under the heading "Ad Litem," saying:

In remanding this cause to the court of appeals, we note our disapproval of the court's refusal to *award* the attorney ad litem his fees.... The court refused to award ad litem fees from the deposit in the registry of the court, which the attorney ad litem argues is contrary to Rule 244 of the Texas Rules of Civil Procedure.

[Because an attorney ad litem would not accept an appointment on a contingent-fee basis, which is the practical result of the court-of-appeals decision,] "good cause" for assessing [sic] such costs against successful parties under Texas Rule of Civil Procedure 141 and Texas Rule of Appellate Procedure 89 is ordinarily shown in such circumstances.

For the reasons stated, we reverse the judgment of the court of appeals and remand the cause to that court *for consideration of Mrs. Cahill's factual sufficiency points.*

(Emphasis added). The Supreme Court's mandate to this Court orders as follows:

The judgment of the court of appeals is reversed;

The cause is remanded to the Court of Appeals for the Third District for a consideration of Mrs. Cahill's factual sufficiency points;

Elisha Rhodes et al. shall recover from Marjorie Cahill, who shall pay, the costs in this Court.

The opinion of the Supreme Court omitted to refer to the reasons why we declined the relief requested for the attorney ad litem: (1) we could not remand the cause to the trial court for the award of an additional sum, for the attorney ad litem's appellate work and related expenses, when these had not been awarded in the trial court and made the subject of a point of error on appeal; and (2) we lacked the power to ascertain and award such a fee and expenses as an original matter, that power being vested exclusively in the trial court.

### Following Remand to the Court of Appeals

■ The cause returned to us for adjudication under the mandate issued by the Supreme Court. The record owners have again claimed a fee for the attorney ad litem for his appellate work and appellate expenses. They do so by a motion entitled "Motion to Allow Fees for Attorney Ad Litem and Court Costs Advanced."

In their motion, the record owners state they submit the motion "to recover reasonable fees for services rendered and to allow Attorney Ad Litem and his law firm to recover Court costs advanced to pursue this appeal." Continuing, the motion avers that the law firm has paid $155.00 "in costs, ... which sum should be reimbursed to said firm by appellant, Marjorie Cahill"; that an attorney for the firm had "expended in excess of 132 hours" in connection with the appeal and writ of error; that

miscellaneous expenses amounted to $174.96; that the firm had received $3,827.18 which "should be credited against the amount owed"; and that the *law firm* was therefore entitled to judgment, for which the firm prayed, in the amount of $10,675.56 less the credit of $3,897.18. The motion concludes with a prayer that the net sum of $6,848.38 "be ordered paid out of and deducted from the shares of those unknown defendants represented by the Attorney Ad Litem prior to distribution of the same."

We reiterate: The appellate record does not show: (1) that the trial court determined upon the evidence, or upon some other basis, what sum constitutes a "reasonable" attorney's fee for any additional work required by the attorney ad litem on appeal, and what expenses he might have incurred in that connection; or (2) that either party took an appeal assigning as error any trial-court determination relative to such attorney's fees and expenses.

We overrule the motion in question. We do so on the basis that the relief requested in the motion is not within the scope of the mandate that unambiguously directed us to consider Marjorie's "factual insufficiency" point of error and did not mention that we should consider the relief requested in the motion. *Wall v. East Texas Teachers Credit Union*, 549 S.W.2d 232 (Tex.Civ. App.1977, writ ref'd); *Key v. W.T. Grant Co.*, 439 S.W.2d 902 (Tex.Civ.App.1969, no writ).

## CORRECTION OF THE TRIAL-COURT JUDGMENT

■ In a letter addressed to the clerk of this Court, the record owners set out various "corrections" they wish the court to make in the trial-court judgment, pointing out that these corrections "have been agreed to by the attorneys in" the case, as indicated by their signatures on the letter.

The "corrections" alter the percentage figures assigned in the judgment to the ownership interests of some 18 individuals who are the heirs of James Byrom Jenkins. For example, the judgment assigned Joyce Jenkins Manning an ownership interest

of .00017857, which the parties wish us to change to .000168642. The letter states that the "corrections":

are necessary as the evidence showed one of the children of James Byrom Jenkins, Benjamin Gray Jenkins had nine (9) children, one of whom, Meda Jenkins married Emmitt Quisenberry. Meda Jenkins Quisenberry died intestate in 1956 leaving her husband but no children surviving. Under the laws of descent and distribution the husband would have inherited one-half of her one-ninth (⅑) interest in the land in question and his name and interest were in advertently [sic] omitted from the fractional shares.

The omission of Emmitt Quisenberry led evidently to the miscalculation, in a similar way, concerning the percentage interests, of all 18 individuals. We consider the letter to be a joint motion by the parties requesting a reformation of the trial-court judgment.

In *Bennett v. McKrell*, 135 Tex. 557, 144 S.W.2d 242 (1940), the Supreme Court considered a judgment awarding a party a one-third interest in certain lots without taking into account the fact that there had been a reservation of the minerals under the property. The parties agreed in the Supreme Court that the judgment was erroneous in not excluding the minerals and the Supreme Court ordered the judgment reformed accordingly. *Bennett*, 144 S.W.2d at 244.

The party omitted from the judgment in the present cause was an unknown heir served with citation by publication, and represented in the cause by the attorney ad litem. We believe, therefore, that we have the power to make the reformation requested.

Accordingly, we order the trial-court judgment reformed by substituting the following in lieu of subparagraphs "a" through "d":

1. The Court finds the heirs of James Byrom Jenkins, and their respective percentage of ownership in said proceeds of sale are as follows:

a. Joyce Jenkins Manning .000168642
Julia Dean Price .000168642
Shirley Jenkins Montgomery .000168642
Ruth Jenkins Cox .000168642
Patsy Jenkins Ballard .000168642
June Jenkins Robinson .000168642
Jimmy Jenkins .000168642

The above interests are subject to the value of the life estate of their mother, Thelma Jenkins for life in one-third (⅓) of Marion Jenkins' .0011111 interest in said land with the remainder to said above-named persons, children of said decedent.

b. William E. Hood .0003935
Charles Hood .0003935
Lois Irene Hood McCullough .0003935
Alma Jenkins Faught .0011805
Kathy McWright Dannar .00059025
Barbara McWright Danel .00059025
Emmitt Quisenberry .0005555

The interests of the two above named McWright children are subject to the value of one-third (⅓) life estate interest of their mother, Nancy Burson McWright on the .0011111 interest of their ancestor, Nina Jenkins McWright, in the above property with the remainder over to said two children.

c. Wilburn Henry Jenkins .0011805
Herma Jenkins Ford .0011805
d. Thomas Gray Jenkins .0011805
Mary Thelma J. Kanetzky .0011805

We affirm the judgment as reformed.

GAMMAGE, J., not participating.

## ON MOTION FOR REHEARING

In his article, *Insufficient Evidence on Appeal, supra,* Judge Garwood endeavored to supply the courts of appeal a practical method for applying, in concrete cases, the abstractions presented by an appellant's contention that a trier-of-fact's failure to find a fact is so against the great weight and preponderance of the evidence as to be manifestly unjust. Following his suggestion, we concluded that, although we would not have reached the same determination as that reached by the trier-of-fact, we could not impute to the trier-of-fact's determination any "prejudice, sympathy or other incorrect motive." We therefore overruled Marjorie's assignment of error. Garwood, *supra,* at 812.

In her motion for rehearing, Marjorie contends we erred by resolving, in the manner suggested by Judge Garwood, the "manifestly unjust" point of error she brought to this Court. She avers that the second part of Judge Garwood's method, i.e., an inquiry whether the fact finder must have been actuated by "prejudice, sympathy or other incorrect motive" to conclude as it did, is inconsistent with the requirement in *Pool v. Ford Motor Company,* 715 S.W.2d 629, 635 (Tex.1986). The *Pool* decision requires a court of appeals, when reversing on factual-sufficiency grounds, to:

> detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias.

*Pool,* 715 S.W.2d at 635.

According to Marjorie, the second of the two inquiries Judge Garwood suggested places on the appellant a greater burden than *Pool* requires—although *Pool* does not require a court of appeals to find bias before it may overturn a finding of fact (as indicated by the disjunctive "or" preceding the expression "clearly demonstrates bias"), we have allegedly required that bias be shown. We see in our opinion above no basis for this contention.

■ We have not required a showing of bias. Rather, we have stated that we may not reverse a trial court's determination unless (1) we would not have reached the same determination and (2) we conclude the determination was actuated by *some improper motive,* which might be bias, sympathy, passion, prejudice, or any other extraneous and improper consideration. Independent proof of improper motive is not required, of course; a court of appeals may infer improper motive from the factual determinations reached in the trial court simply in light of all the evidence in the case. *Houston & T. C. R. Co. v. Bright,* 156 S.W. 304, 310 (Tex.Civ.App.1913, writ ref'd) ("This court has no authority to set aside a verdict [as] against the great preponderance of the testimony unless the preponder-

ance is such as to indicate prejudice, passion or other improper motive.").

Marjorie contends next that any necessity for showing improper motive was eliminated from a "factual sufficiency" analysis by the decision in *Pope v. Moore*, 711 S.W.2d 622 (Tex.1986). In that remittitur case, the supreme court applied the *Pool* instructions, quoted above, stating that "[l]ower courts need not find passion, prejudice, or other improper motive on the jury's part to order a remittitur." *Id.* at 624. We do not believe this language, considered in conjunction with the *Pool* instructions, nullified the practical method Judge Garwood suggested. Firstly, *Pool* purports to eliminate the requirement that a *trial* court find passion, prejudice, or other improper motive before ordering a *remittitur*; it does not purport to speak to an *appellate* court's review of the evidence supporting a trial court's factual determinations. Secondly, the language of *Pope* must be understood in light of the decisions cited therein for the proposition that a trial judge need not find an improper motive before ordering a remittitur. These decisions are *Flanigan v. Carswell*, 159 Tex. 598, 324 S.W.2d 835, 841 (1959), later "overruled to the extent that it advocates a standard for remittiturs varying from that enunciated in *Pope*," *Larson v. Cactus Utility Co.*, 730 S.W.2d 640 (Tex.1987), and *Dallas Ry. & Terminal Co. v. Farnsworth*, 148 Tex. 584, 227 S.W.2d 1017, 1022 (1950).

*Flanigan* states simply that there need not be *extraneous evidence* of passion, prejudice, or other improper motive before a court of appeals may sustain a trial-court order of remittitur, relying on the *Farnsworth* holding that the amount of the verdict, in light of all the evidence in the record, may supply sufficient evidence of passion, prejudice, or improper motive to enable a reviewing court to order a remittitur.[1]

The method Judge Garwood supplied is a practical one designed to prevent a court of appeals from intruding into the trial-court domain in an effort to correct a factual determination that might have led to an injustice. We see in *Pope* and *Pool* nothing to indicate that the Garwood method is erroneous. We hold accordingly and overrule Marjorie's motion for rehearing.

The record owners, in a motion for rehearing, assail the part of our opinion "declining to permit attorney ad litem to recover his fees for his representation of the unknown heirs as costs of court." We have set out above our best understanding of the supreme court's previous opinion concerning the matter of such attorney's fees and costs in this cause. We adhere to our reasoning above and our holding that such relief "is not within the scope of the mandate that unambiguously directed us to consider Marjorie's 'factual insufficiency' point of error and did not mention that we should consider the relief requested in the motion" regarding attorney's fees and costs. The motion for rehearing does not speak to this holding. Over six months have passed since the holding was published in an opinion filed January 23, 1991. The supreme court has not changed the mandate so far as this Court has been informed, although ample time was provided therefor. We therefore overrule the record owners' motion for rehearing.

GAMMAGE, J., not participating.

1. Before *Flanigan* and *Farnsworth*, the supreme court in *World Oil Co. v. Hicks*, 129 Tex. 297, 103 S.W.2d 962, 964 (1937), had stated:
   [P]rejudice or passion must be affirmatively shown; excessiveness of the verdict in itself does not establish it, unless it is so flagrantly excessive that it cannot be accounted for on any other ground; but it has been held that, where it clearly appears that the damages are grossly excessive, that fact may be regarded to some extent as reflecting the failure of the jury to appreciate and apply the testimony as to the question of liability, and a new trial may be granted without a condition. 446 C.J. p. 431, § 500.